# Exhibit C

# Ron Huff

| | |
|---|---|
| **From:** | Ross, John <JRoss@thompsoncoe.com> |
| **Sent:** | Saturday, June 8, 2019 12:09 PM |
| **To:** | Ron Huff |
| **Subject:** | RE: Spindle v. CKJ Trucking |
| **Attachments:** | 01 Complaint, Spindle.pdf; 33-2 Ex B Proposed Complaint--Yellow Highlighted.pdf |
| **Importance:** | High |

Ron,

I have carefully reviewed your proposed amended complaint in comparison to the original. For convenience, I have attached a copy of your proposed amended complaint, yellow-highlighted to reflect the changes from the original complaint. I oppose your proposed motion for leave to amend for the following reasons—not necessarily in any order or priority.

- ➢ Your deadline under the *Scheduling Order* for seeking to amend the *Complaint* was May 15, 2019—nearly a month ago. Thus, your motion would be untimely. Accordingly, any request to amend at this point would require a demonstration of "good cause" under *Fed. R. Civ. P.* 16(b), which—based on the facts of this case and the law—you cannot demonstrate.

- ➢ Except for the identification of the new company, you were fully aware of the other attempted changes in your allegations *before* the May 15, 2019, pleading amendment deadline, *e.g.*, the allegation that your client was "terminated" on March 29, 2019. Indeed, on May 1, 2019—*two weeks before the pleading amendment deadline*—you filed a new EEOC *Charge* on behalf of your client on that precise basis. Yet, you did not seek at that time leave to amend Spindle's complaint; nor did you seek an extension of the *Scheduling Order* deadline in which to do so.

- ➢ Regarding the "reasonable accommodation" allegations, as a matter of law your client failed to exhaust administrative remedies regarding any such claim. There is no mention whatsoever in either the original *Charge* or in the new *Charge* of a failure to accommodate claim. Failure-to-reasonably-accommodate is a separate, distinct theory of liability under the ADA. *E.g., Hamar v. Ashland, Inc.*, 211 Fed. App'x. 309, 310 (5th Cir. 2006) ("The two relevant claims, failure to accommodate and disparate treatment, represent distinct categories of disability discrimination under the ADA."). Filing a charge with the EEOC which only alleges disparate treatment disability discrimination does not exhaust administrative remedies regarding a reasonable accommodation claim. *See, e.g., Hamar v. Ashland, Inc.*, 211 Fed. App'x. at 310; *Woods v. United Parcel Serv.*, 2018 WL 6729690, at 5 (N.D. Tex. Nov. 7, 2018), *rep. and recom. adopted*, 2018 WL 6727083 (N.D. Tex. Dec. 21, 2018) ("[A] plaintiff wishing to exhaust remedies regarding a failure-to-accommodate claim must allege specific facts enabling the EEOC to determine that she requested an accommodation and the employer denied it."); *Robles v. Tex. Tech Univ. Health Sci. Ctr.*, 131 F. Supp. 3d 616, 635 (W.D. Tex. 2015) (barring a failure-to-accommodate claim because "the EEOC Complaint does not assert Plaintiff ever requested a reasonable accommodation" or otherwise "suggest[ ] Defendants were aware an accommodation was needed"). Thus, as a matter of law your

1

client has failed to exhaust administrative remedies regarding any such claim and any amendment seeking to allege a failure to accommodate claim would be in bad faith as a matter of law. Any attempt to amend at this point to add or assert such a claim would be futile. "[A] district court may refuse leave to amend if the filing of the amended complaint would be futile, *i.e.*, if the complaint as amended would be subject to dismissal." *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 208 (5th Cir. 2009) internal quotation marks omitted).

➢ Based on your own client's deposition, as a matter of law his claims are BS and, unless you dismiss the suit, I will be filing a motion for summary judgment and requesting sanctions/attorney fees. Specifically, and without limitation, as a matter of law your client was not a "qualified individual with a disability at the time of his alleged "termination" in December 2017. Your client admitted he did not then possess a valid DOT medical certification to operate a tractor-trailer and that his CDL had been suspended—both essential job requirement, the lack of which precluded him from being able to perform the essential functions of the job—*and to this day has never subsequently possessed a valid DOT medical certification or gotten his CDL restored*. Accordingly, as a matter of law, since his certification expired in September 2017, your client has never been a "qualified individual with a disability" as of, or at or any time since, he allegedly was wrongfully "terminated" in December 2017.

➢ Because, by his own admission, he has not been qualified to operate a tractor trailer, as a matter of law he cannot make a claim for any back pay. A Plaintiff cannot recover back pay or front pay for any period of time during which he was not able to work. *See, e.g., Gamboa v. Henderson*, 2000 WL 1835289, at 4 (5th Cir. Nov. 29, 2000) (back pay and front pay are inappropriate for periods of time during which plaintiff was unable to work because of disability); *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993) (denying award of back pay for period during which plaintiff was disabled); *Walston v. Sch. Bd.*, 566 F.2d 1201, 1206 (4th Cir. 1977) ("[plaintiff] may not recover for the school year during which she was pregnant and unable to teach"); *Smyth v. Wawa, Inc.*, 2008 WL 741036, at 15 (E.D. Pa. Mar. 19, 2008) (recognizing the principle, but denying employer partial summary judgment on back pay because of disputed questions of fact regarding "whether and when she was or was not able to work"); *Rush v. Speedway Buick Pontiac GMC, Inc.*, 525 F.Supp.2d 1265, 1278–79 (D. Kan. 2007) (partial summary judgment granted to employer regarding back pay for period of time plaintiff failed to seek employment because of childbirth and complications from childbirth); *Nofles v. State Farm Mut. Auto. Ins. Co.*, 101 F.Supp.2d 805, 820 (E.D. Mo. 2000) (plaintiff could not recover back pay for period during which she was unable to work because of disability); *Berger v. Iron Workers*, 1994 WL 151292, at 54–55 (D. D.C. 1994) (no entitlement to back pay for period in which plaintiff was unable to work because of injury), *aff'd in part, reversed in part on other grounds*, 170 F.3d 1111 (D.C. Cir. 1999).

➢ Similarly, your client cannot recover back or front pay because, by his own admission, he has failed as a matter of law to mitigate his alleged damages. Specifically, he admitted under oath that he has not sought any similar employment, *i.e.*, a trucking job. "[A] plaintiff seeking damages in a termination suit has a duty to mitigate damages not only by seeking <u>substantially similar employment</u> after termination but also by reasonably maintaining that employment." *Davis v. Fisk Elec. Co.*, 187 S.W.3d 570, 588

2

(Tex. App.—Houston [14th Dist.] 2006), *rev. on other grounds*, 268 S.W.3d 508 (Tex. 2008) (trial court improperly ruled on a *Batson* challenge after *voir* dire). *See also Alamo Comm. Coll. Dist. v. Miller*, 274 S.W.3d 779, 787 (Tex. App.—San Antonio 2008, n.p.h.) (plaintiff has a duty to seek substantially similar work); *Costal Mart, Inc. v. Hernandez*, 76 S.W.3d 691, 698 (Tex. App.—Corpus Christi 2002, pet. dism'd by agr.) ("A wrongfully discharged employee has a duty to mitigate damages by making a good faith effort to obtain and retain employment."). *Accord Patterson v. P.H.P Healthcare Corp.*, 90 F.3d 927, 935-37 (5th Cir. 1996), *cert. denied*, 519 U.S. 1091 (1997). "Substantially equivalent" employment is employment "which affords virtually identical promotional opportunities, compensation, *job responsibilities, working conditions, and status* as the position from which the Title VII claimant has been discriminatorily terminated." *Sellers v. Delgado Comm. College*, 839 F.2d 1132, 1138 (5th Cir. 1988) ("*Sellers II*") (emphasis added), *aff'd after remand*, 902 F.2d 1189 (5th Cir.) ("*Sellers III*"), *cert. denied*, 498 U.S. 987 (1990). Although a defendant bears the burden of proving failure to mitigate, the defendant meets that burden <u>as a matter of law</u> where, as here, the plaintiff admits no effort to seek other comparable employment. *Davis v. Fisk Elec. Co., supra, citing Sellers III*. In such circumstances, the defendant is not required to produce evidence substantially equivalent work was available—although, by your client's own admission, truck drivers are in such demand that many companies are paying signing bonuses. *See, e.g., Sellers III*, 902 F.2d at 1193:

> . . . In *Sellers II* . . . we held that "if an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially equivalent employment." *Id.*

➢ *Accord, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003) ("Although the employer is normally required to prove that substantially equivalent work was available . . . once the 'employer proves that an employee has not made reasonable efforts to obtain work the employer does not also have to establish the availability of substantially equivalent employment.'"); *Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2d Cir. 2005); *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 16 (1st Cir. 1999), *cert. denied*, 535 U.S. 1023 (2002) ("Other courts of appeals . . . uniformly have relieved the defendant employer of the burden to prove the availability of substantially equivalent jobs in the relevant geographic area once it has been shown that the former employee made no effort to secure suitable employment."); *Stephenson v. Nokia, Inc.*, 2008 WL 2669492, at 8 (N.D. Tex. May 1, 2008) (quoting *Sellers III*, summary judgment granted for employer regarding plaintiffs failure to mitigate, without the necessity for proof substantially equivalent jobs were available, where plaintiff admitted she had not made any efforts to find comparable work). In these circumstances, the failure to mitigate also precludes recovery of front pay. *See Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 869 (5th Cir. 1991); *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1469 (5th Cir. 1988), *cert. denied*, 493 U.S. 842 (1989).

➢ In the foregoing regard, your client testified (emphasis added):

> Q. Okay. You said earlier that you haven't sought any truck driving jobs since December of 2017 because you didn't want to drive a truck anymore. *Why don't you want to drive a truck anymore?*
>
> A. *Tired of being gone and all the hassle.*

. . . Q. You've told us that in December of 2017 when you say the doctor released you to return to work you were ready to go back to work at—at CKJ.

A. Yes.

Q. As a truck driver.

A. Yes.

Q. You've also told the jury that since that date, *you haven't sought any truck driving positions* because you were tired of being a truck driver and you didn't like the time away from home, *correct?*

A. *True.*

Q. So when did you come to this revelation that you didn't want to be a truck driver anymore?

A. About 10 years ago. Just something you do for a living. I mean, some of us get up at 2:00 o'clock in the morning, get to the yard and check your truck out and make sure it's ready to go and get after it.

. . . Q.  Well, there are trucking—there are companies that hire people to drive trucks locally—

A. Yes.

Q. –right?

A. Yes.

Q. And some of those jobs require CDLs, right?

A. Yes.

Q. So you could—you could apply for a local hauling job and not have to spend time away from home, right?

A. *I don't want to drive a truck anymore;* too much congestion and traffic.

Q. *And that's just a decision you've made?*

A. *Yes.*

Q. *So you have not looked for a single truck driving job since December 20, 2017, correct?*

. . . A. *No.*

Q. (BY MR. ROSS) *Correct?*

. . . A. *Yes.*

4

... Q. (BY MR. ROSS) *You could get a job as a truck driver if you wanted to as soon as you got medically certified and got your license restored, correct?*

... A. *Probably.*

Q. (BY MR. ROSS) *In fact, you know that trucking companies these days are paying hiring bonuses because they can't find enough drivers, right?*

... 12 A. *Yes.*

➢ Accordingly, as a matter of law your client cannot recover back or front pay. Period.

➢ Moreover, despite the hyperbolic allegations in the *Complaint* and in the proposed *Amended Complaint*, your client has, in fact, **never produced any release to return to work from treatment for his circulatory treatment and leg surgery**: (1) Your client never provided anyone at CKJ with a release in December 2017; (2) in discovery you have not provided and cannot produce a copy of any such alleged release; and (3) the doctor's records—which have been obtained in response to a deposition on written questions—do not reflect any such release in December 2017. So, as a matter of law your client was not able in December 2017 to perform the essential functions of his job, with or without reasonable accommodations—for which he never asked. Additionally, your client cannot simply testify that he had been released. Any such claim would be inadmissible hearsay as a matter of law. What a patient tells a doctor for purposes of medical treatment can be an exception to the hearsay rule; but, what the doctor allegedly told the patient is hearsay. *See, e.g., Sosa v. Coastal Corp.*, 55 Fed. App'x. 716, 2002 WL 31933068 (5th Cir. 2002) ("Sosa's report of Dr. Weber's order to stay off her leg is inadmissible hearsay."); *Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 678–79 (W.D. Tex. 2015) ("Although Plaintiff's description of his medical symptoms is within his personal knowledge and is not hearsay, Plaintiff's own recounting of his medical diagnoses and his doctor's orders, offered for proof of those diagnoses and orders, constitutes inadmissible hearsay. . . . In sum, although Plaintiff's statements about his physical symptoms are admissible, all of the statements in the Declarations of Plaintiff and Lori regarding Plaintiff's medical diagnoses are inadmissible hearsay."); *Mitchel v. Buncich*, 2013 WL 275592, at 8 (N.D. Ind. Jan. 24, 2013) ("Paragraph 7 [of summary judgment affidavit] provides . . . "He has been informed by medical personnel that these conditions are now permanent." . . . To the extent Sam Mitchell is repeating diagnoses provided by medical professionals, the sentence constitutes inadmissible hearsay."); *Saley v. Caney Fork, LLC*, 886 F. Supp. 2d 837, 847 (M.D. Tenn. 2012) (ADA plaintiff's recounting of his doctor's diagnosis were inadmissible hearsay); *Scott v. Turner Indus. Grp., LLC*, 2011 WL 5023842, at 3 (M.D. La. Oct. 19, 2011) ("The court agrees that plaintiff's statement offers the assertion of medical diagnoses which constitutes hearsay. While plaintiff may testify as to the symptoms that led her to seek treatment and to the treatment she undertook, any clinical diagnoses must be attested to by Dr. Todd"); *Hood v. City of Cleveland,* 2011 WL 533676, at 5 (N.D. Miss. Feb. 15, 2011) ("Hood has provided no medical documentation regarding her condition, and her statements regarding her doctor 'not approving her to return to work' are hearsay and incompetent summary judgment evidence"); *Holt v. Olmsted Twp. Bd. of Trs.*, 43 F.Supp.2d 812, 819 (N.D. Ohio 1998) (although a plaintiff may have personal knowledge of his diagnoses, the "diagnoses of . . . doctors may only be established

through admission of the relevant doctor's records pursuant to Federal Rule of Evidence 803(6) or the sworn testimony of these doctors.").

- When Spindle was absent from work he was as a matter of law not a "qualified individual" because (1) he had exhausted all FMLA leave and was, therefore, no longer the incumbent in his former position; and (2) was not medically able to perform the essential functions of what had been his job. Specifically, "[r]egular attendance is a necessary qualification for most jobs." *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 860 n. 3 (5th Cir. 2010). With your client's FMLA leave exhausted, CKJ was under no obligation to afford your client with additional indefinite leave. *See, e.g., Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 481 (5th Cir. 2016) ("[A]n employer is not required to provide a disabled employee with indefinite leave."); *Rogers v Int'l Marine Terminals, Inc.*, 87 F.3d 755, 760 (5th Cir. 1996) ("'[R]easonable accommodation does not require [an employer] to wait indefinitely for [an employee's] medical conditions to be corrected.'" [citations omitted]).

- Your client has not exhausted administrative remedies either (1) against CKJ Transport of North Texas, LLC; or (2) regarding any alleged "discharge" in March 2019.

- Contrary to your FMLA allegations, by Spindle's own admissions during his depositions (and as documented by the personnel documents produced in discovery), your client was afforded far MORE than the twelve weeks of leave required by the FMLA. Accordingly, as a matter of law, he had no right of reinstatement. *See, e.g., Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2002); *Meadows v. Texar Fed. Credit Union*, 2007 WL 192942, at 26 (E.D. Tex. Jan. 22, 2007) ("The FMLA does not protect an employee who fails to return to work on or before the date her FMLA leave expires."); 29 C.F.R. § 825.216(c) ("If the employee is unable to perform an essential function of the position because of . . . the continuation of a serious health condition . . . the employee has no right to restoration to another position under the FMLA.").

- As a factual matter, your client's own deposition testimony and indisputable official and medical records negate any contention that he was discharged—or suffered any other adverse personnel action—in December 2017: (1) he admitted no one at CKJ ever told him he was discharged—all he was told (correctly) was that they could not speak with him based on the directive from his lawyer; (2) he never thereafter had his lawyer contact CKJ (Query: have you sued that lawyer for malpractice??????!!!???); (3) when he filed for unemployment he told the TWFC that he had "quit due to medical reasons;" (4) accordingly, his claim was denied by the TWFC for that very reason; (5) in November 2017—before he claims to have been medically released and showed up at CKJ in December—he applied for Social Security and subsequently several times completed medical history forms for his doctors in which he said he was "retired;" and (6) he admits he hasn't sought a single trucking job since he last worked at CKJ.

- Your client negated any FMLA retaliation claim with his own testimony. Specifically, when asked he testified (emphasis added):

    Q. Yeah. You told us earlier that you were off for a period of about 24 weeks and that 12 weeks of that was covered under FMLA.

    A. Yes.

6

Q. And my question is, *do you believe that the company didn't let you come back to work in December of 2017 because you had gotten 12 weeks of FMLA leave?*

A. *No.*

> ➢ Given all of the foregoing, filing the proposed amended complaint would constitute a knowing violation of Rule 11. The document is neither factually nor legally supported.

For of the foregoing reasons, and others, your client's claims are utterly without merit. Unless the lawsuit is voluntarily dismissed not later than next Friday, June 14th, I will proceed to file a motion for summary judgment, have costs taxed against your client, and will seek recovery of defense attorney fees under *Christianburg*. Further, if you attempt to file your proposed amended complaint, I will seek Rule 11 sanctions.

**THOMPSON COE**

John L. Ross, Partner
700 N. Pearl St., 25th Floor, Dallas, TX 75201
● p: 214-871-8206 ● m: 214 498-3282 ● f: 214 871-8209
Board Certified in Labor & Employment Law and Civil Trial Law
by the Texas Board of Legal Specialization
bio • vCard • web

---

**From:** Ron Huff [mailto:ronhuff@gcecisp.com]
**Sent:** Thursday, June 06, 2019 2:21 PM
**To:** Ross, John
**Subject:** Spindle v. CKJ Trucking

Please find attached Plaintiff's motion for leave to amend his complaint along with the proposed amended complaint (Exhibit B).

For purposes of conference, please let us know if you are opposed, unopposed, or agreed.

Please telephone if you would care to discuss further with Mr. Huff.

Thank you,

Juerena R. Hoffman
Legal Assistant
Law Office of Ronald R. Huff
112 S. Crockett Street
Sherman, Texas 75090
903-893-1616
903-813-3265 (facsimile)
ronhuff@gcecisp.com

---

Virus-free. www.avast.com

7

**Confidentiality Notice:** This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information exempt from disclosure under applicable law. Unauthorized review, use, disclosure, or distribution is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy the original and all copies of the message. Thank you.

Tax Advice Disclosure: Any U.S. federal tax advice contained in this communication, including any attachment(s), unless expressly stated otherwise, was and is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.