IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID W. SPINDLE, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CA NO. 4:18-CV-818-SDJ-KPJ |
| | § | |
| CKJ TRUCKING, L.P., AND | § | |
| CKJ TRANSPORT OF NORTH TEXAS, LLC | § | |
| | § | |
| DEFENDANTS. | § | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OBJECTIONS (DOCKET NO. 70) TO DEFENDANTS' VIDEO DEPOSITION DESIGNATIONS (DOCKET NO. 69)**

## INTRODUCTION

Pursuant to the Court's *Scheduling Order* (Docket No. 15), on November 26, 2019, Defendants timely served on Plaintiff (via the Court's electronic filing system) with Defendants' designations of the portions of Plaintiff's video-taped deposition which Defendants might offer in evidence at trial. Docket Nos. 68 and 69. Under the Court's *Scheduling Order* (Docket No. 15), Plaintiff had seven (7) days thereafter to:

- serve "a response with any objections,"—but, *before* serving/filing any objections "consult on any objections and only those which cannot be resolved shall be presented to the Court;" and

- by page and line, request cross-examination to be included in the videotaped excerpts.

On December 3, 2019—without having first consulted with Defendants' counsel concerning any objections—Plaintiff filed a "response" (Docket No. 70) to Defendants' deposition designations which: (1) cites no legal authority

1

whatsoever; (2) with only one limited exception, fails to assert any legal, *evidentiary* objection to any of the designations; and (3) asserts numerous, irrelevant, illogical, and unfounded non-evidentiary objections to the designations.

As a matter of law, the "response" should be disregarded and Plaintiff's "objections" overruled.

### A. PLAINTIFF'S FAILURE TO COMPLY WITH THE *SCHEDULING ORDER*:

The Court's *Scheduling Order* expressly states: "Counsel must consult on any objections and only those which cannot be resolved shall be presented to the Court."

Plaintiff utterly failed to comply with the Court's directive. Plaintiff's "response" (Docket No. 70) contains no certificate of conference. *See Local Rule* CV-7(h). Accordingly, on this ground alone, Plaintiff's "response" should be rejected in its entirety.

### B. PLAINTIFF'S "PROCEDURAL" COMPLAINTS:

Plaintiff's "response" raises numerous "objections" or complaints, not based on anything in the *Fed. R. Evid.* Accordingly, they should be ignored or rejected.

First, Plaintiff objects that the designations were *filed* with the Court, not merely *served* on opposing counsel. Docket No. 79, ¶ I(A). The objection is utterly specious. The designations were served on Plaintiff's counsel via the Court's electronic filing system—a fact Plaintiff, necessarily, concedes.

Second, Plaintiff objects that Defendants' designations were identified by reference to a document (Docket No. 35-2) which was subsequently replaced by an *identical* document, Docket No. 36-2. Docket No. 79, ¶ I(B). The objection is utterly specious. Plaintiff, obviously, had no difficulty in identifying the

designations and the "status" of Docket No. 35-2 is utterly irrelevant to the sufficiency of the designations.

Third, Plaintiff complains that the length of the designations is "excessive." Docket No. 79, ¶ I(C). Plaintiff cites no authority to support the contention. Moreover, had Plaintiff's counsel complied with the *Scheduling Order* and *Local Rules* and first conferred with defense counsel before filing Plaintiff's "response" the alleged "excessiveness" of the designations might have been narrowed.[1]

Fourth, Plaintiff complains that—in his view—Defendants' designations did not identify the pages and lines designated. Docket No. 79, ¶ I(D). The contention is specious. The pages and lines designated were specifically identified, *i.e.*, those lines which were yellow highlighted. By virtue of the complaints and objections made in Plaintiff's "response," Plaintiff clearly has been able to determine the portions of his videotaped deposition which were designated. *See* Docket No. 79, pp. 2-3, where Plaintiff objects to specific pages and lines of designated testimony.[2]

### C. EXCERPTS FROM PLAINTIFF'S VIDEOTAPED DEPOSITION ARE SUBSTANTIVELY ADMISSIBLE IN EVIDENCE, NOT LIMITED TO USE FOR IMPEACHMENT:

Plaintiff's "response" next seeks to limit Defendants' use of Plaintiff's deposition to impeachment only. However, unlike non-party witness depositions which may only be used for impeachment under *Fed. R. Evid.* 613 unless the witness is "unavailable" under *Fed. R. Evid.* 804(b), Plaintiff's

---

[1] Defendants disagree that the designations are "excessive." Nevertheless, Defendants do not necessarily anticipate actually introducing into evidence *all* of the designations; but—as explained further below—introducing selected portions of the videotaped deposition so that those portions may be incorporated into Defendants' opening statement and closing argument.

[2] And, again—Plaintiff failed to confer regarding this hyper-technical complaint before filing his "response."

videotaped deposition statements are *substantively* admissible non-hearsay. *Fed. R. Evid.* 801(d)(2)(A):

> **(d) Statements That Are Not Hearsay.** A statement that meets the following conditions is not hearsay:
>
> . . . **(2) An Opposing Party's Statement.** The statement is offered against an opposing party and:
>
> (A) was made by the party in an individual or representative capacity;

Accordingly, as a matter of law Defendants are entitled to offer in evidence relevant portions of Plaintiff's video-taped deposition irrespective of whether Plaintiff testifies at trial consistent with key portions of his deposition. The jury is entitled to assess Plaintiff's "manner and demeanor"[3] *during the deposition* when Plaintiff made critical, unvarnished, impromptu, unrehearsed admissions inconsistent with the allegations in his lawsuit. The jury need not be constrained to considering only a carefully prepared and coached version which Plaintiff may give at trial. For example:

**<u>NOT A QUALIFIED INDIVIDUAL WITH A DISABILITY</u>**



Spindle, David, (Page 29:23 to 30:01)

Q. And holding a CDL and a valid Department of Transportation medical certification was an essential job requirement to work as a

---

[3] *See* Fifth Circuit Civil Pattern Jury Instructions, § 3.4.

**4**

truck driver for CKJ, correct?

A. Yes.

Spindle, David, (Page 32:10 to 32:19)

Q. Now, the [DOT Medical Examiner's Certificate] that's shown in Exhibit 38 shows an expiration date of September 26th, 2017, correct?

A. Yes.

Q. Do you contend that you were at any time, after September 26th, 2017, issued a Medical Examiner's Certificate by any doctor?

A. No.

Q. So the last valid medical certificate that you had is the one that's reflected in Exhibit 38?

A. Yes.

Spindle, David, (Page 55:6 to 55:11)

Q. Since your CDL has been suspended and you, by your own admission, have taken no steps to get a new medical certification, you have not been qualified to hold a trucking job to drive a tractor-trailer since December of 2017, correct?

A. I believe that's right.

## **FAILURE TO MITIGATE DAMAGES**



Spindle, David, (Pages 101:21 to 102:8)

Q. But you said you had a full release to return to work, right?

A. Yes.

Q. And you were—didn't require any accommodations; you were able to, according to you, perform all of the essential functions of your job, correct?

A. Yes.

Q. And your heart condition or—hasn't limited you from seeking other employment, correct?

A. No.

Q. You could accept other jobs?

A. Yes.



Spindle, David, (Pages 49:11 to 50:2)

Q. Now, none of the applications that you claim to have made for employment since December of 2017 were for a trucking—

A. No.

Q.—position, correct?

A. No.

Q. That's correct, right?

A. Yes, yes.

Q. And you've taken no steps since December of 2017 to become medically certified under the Department of Transportation regulations, correct?

A. Yes.

Q. And have taken no steps to lift the suspension on your CDL, true?

**6**

A. True.

Q. Why?

A. Don't want to drive a truck anymore.

Spindle, David, (Page 81:16 to 81:20)

Q. Okay. You said earlier that you haven't sought any truck driving jobs since December of 2017 because you didn't want to drive a truck anymore. Why don't you want to drive a truck anymore?

A. Tired of being gone and all the hassle.

Spindle, David, (Pages 110:17 to 111:8)

Q. You've told us that in December of 2017 when you say the doctor released you to return to work you were ready to go back to work at -- at CKJ.

A. Yes.

Q. As a truck driver.

A. Yes.

Q. You've also told the jury that since that date, you haven't sought any truck driving positions because you were tired of being a truck driver and you didn't like the time away from home, correct?

A. True.

Q. So when did you come to this revelation that you didn't want to be a truck driver anymore?

A. About 10 years ago. Just something you do for a living. I mean, some of us get up at 2:00 o'clock in the morning, get to the yard and check your truck out and make sure it's ready to go and get after it.

## **NEVER DISCHARGED—RETIRED**



Spindle, David, (Page 90:8 to 90:19)

Q. Okay. Just to be clear, on December 19th when you showed up at the company, nobody told you you were discharged, did they?

A. Nope.

Q. Nobody told you that you were fired?

A. Nope.

Q. When you spoke with Mr. Downs on the next day, on December 20th, he didn't tell you you were fired, did he?

A. Nope.

Q. He didn't tell you you were discharged, did he?

A. Nope.

Spindle, David, (Pages 50:20 to 52:22)

Q. And you know that it's common practice when you go to see a doctor for them to take a medical history.

A. Yes.

. . . Q. And you understand that it's important to provide the doctor with accurate information.

A. Yes.

Q. Because they may rely on that information in making their diagnoses?

A. Right.

8

Q. And their treatment decisions?

A. Yes.

Q. Okay. And so when you complete forms that a doctor asks you to complete, you put down accurate information, don't you, sir?

A. Yeah.

. . . Q. Exhibit 116 is an Adult Patient Information form that you were asked to complete by one of your doctors, correct?

A. Yes.

. . . Q. It's also your signature that appears on page two, correct?

A. Yes.

Q. Right next to where it says, I verify the above information is accurate, right?

A. Yes.

Q. Was the information—strike that. The handwritten information that's on Exhibit 116 is information you completed, correct?

A. Yes.

Q. And was the information that you included on Exhibit 116 accurate?

A. Yeah.

. . . Q. When the doctor asked you to complete the employment section of this form, tell the jury what you wrote in July of 2018?

A. ["]Retired["]

Additionally, because Plaintiff's videotaped deposition is substantively admissible, Defendants are entitled to incorporate excerpts of the video deposition in their opening statement and closing argument.

D. **PLAINTIFF'S STATEMENTS TO THE TEXAS WORKFORCE COMMISSION ARE ADMISSIBLE:**

Finally, without citing any legal authority for support, Plaintiff objects to portions of Plaintiff's deposition in which Plaintiff admitted making statements

**9**

to the Texas Workforce Commission ("TWFC") in connection with his unemployment claim which are wholly inconsistent with his discrimination claims in this case. For example, contrary to his contention that CKJ discharged him, Plaintiff told the TWFC that he "quit due to medical reasons."



As a matter of law, Plaintiff's statements are admissible as admissions of a party opponent.

## CONCLUSIONS AND REQUESTED RELIEF

For all of the foregoing reasons, Plaintiff's "response" should be disregarded and all "objections" overruled.

Respectfully submitted,

*/s/ John L. Ross*
**JOHN L. ROSS**[5]
Texas State Bar No. 17303020

**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
700 North Pearl Street
Suite 2500
Dallas, Texas 75201
Telephone: (214) 871-8200
Facsimile: (214) 871-8209
Email: jross@thompsoncoe.com

**ATTORNEYS FOR DEFENDANTS**

---

[4] Plaintiff admitted he has no reason to dispute the accuracy of the TWFC's records (Depo. p. 93:7-9): "Q. Do you have any reason to dispute the accuracy of this record from the Texas Workforce Commission? A. No."

[5] Board Certified in Labor & Employment Law and Civil Trial Law by the Texas Board of Legal Specialization

**CERTIFICATE OF SERVICE**

Pursuant to *Fed. R. Civ. P.* 5(b)(2)(E) and 5(b)(3), I hereby certify a true and correct copy of the foregoing document was filed electronically on this 10th day of December, 2019. Parties may access this filing through the Court's system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ *John L. Ross*
**JOHN L. ROSS**