**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **DAVID W. SPINDLE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | **Case No.: 4:18-cv-818-SDJ-KPJ** |
| | § | |
| **CKJ TRUCKING, L.P., and** | § | |
| **CKJ TRANSPORT OF NORTH** | § | |
| **TEXAS LLC,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The following motions are pending before the Court:

1. Defendant CKJ Trucking, L.P.'s ("CKJ Trucking") Motion for Summary Judgment
("CKJ Trucking's Motion") (Dkt. 36), to which Plaintiff David W. Spindle
("Plaintiff") filed a response (Dkt. 44), and CKJ Trucking filed a reply (Dkt. 49);
and

2. Defendants CKJ Trucking and CKJ Transport of North Texas LLC's (together,
"Defendants") Motion for Summary Judgment ("Defendants' Motion") (Dkt. 40),
to which Plaintiff filed a response (Dkt. 44) and a supplemental response (Dkt. 55),
and Defendants filed a reply (Dkt. 50). The Court held a hearing to address
Plaintiff's supplemental response on October 4, 2019 (the "Hearing") (Dkt. 60).
The Court held a hearing to address CKJ Trucking's Motion and Defendants'
Motion (collectively, the "Motions")[1] on January 15, 2020 (the "Summary
Judgment Hearing") (Dkt. 81).

Upon review of the pleadings and the relevant law, the Court recommends:

1. CKJ Trucking's Motion (Dkt. 36) be **GRANTED**; and

2. Defendants' Motion (Dkt. 40) be **GRANTED**.

---

[1] Defendants' Motion largely incorporates the arguments asserted in CKJ Trucking's Motion.

# I.   __BACKGROUND__

Plaintiff filed this lawsuit against CKJ Trucking on November 16, 2018, alleging that CKJ Trucking discriminated against him based on his disability in violation of The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, and retaliated against him in violation of The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq. See* Dkt. 1. On June 10, 2019, Plaintiff amended his complaint to allege both claims against CKJ Trucking and CKJ Transport of North Texas, LLC ("CKJ Transport"). *See* Dkt. 34.

CKJ Trucking is a for-profit entity in Texas, and CKJ Transport is the successor entity to CKJ Trucking. *See* Dkt. 34 at 1. Plaintiff was employed by CKJ Trucking for a total of approximately three years between 2008, and his separation in 2017, working for the company on three separate occasions as a tractor-trailer operator. *See* Dkt. 36-2 at 4–5, 8. The first two times Plaintiff worked for CKJ Trucking, he voluntarily terminated his employment. *See id.* at 4–5. During Plaintiff's second tenure of employment with CKJ Trucking in 2012, Plaintiff underwent open heart surgery. *See* Dkt. 36-2 at 48. Plaintiff subsequently returned to work for CKJ Trucking after his surgery until he resigned in 2013. *See id.* Plaintiff does not contend CKJ Trucking discriminated against him during his first two terms of employment. *See id.*

On or about April 13, 2017, while Plaintiff was employed for a third time by CKJ Trucking, he sought and was approved for FMLA leave due to an alleged on-the-job injury to his right foot. *See* Dkt. 45-2 at 1. Plaintiff returned to work approximately one month later. *See id.* On or about July 14, 2017, Plaintiff was taken off work by his physician for chest pains, and he received FMLA leave to undergo medical treatment. *See id.* Plaintiff underwent surgery on his right leg in September 2017. *See* Dkt. 45-2 at 1. While Plaintiff was on FMLA leave, he applied for and received short-term disability payments through CKJ Trucking's insurance carrier, Mutual of

Omaha. *See id*. Plaintiff's short-term disability benefits ceased on December 21, 2017. Dkt. 45-6 at 23.

On October 2, 2017, while Plaintiff was still on FMLA leave, an attorney for Plaintiff submitted a letter to CKJ Trucking, wherein attorney Anthony O'Hanlon ("O'Hanlon") informed CKJ Trucking that he represented Plaintiff (the "Letter"). *See* Dkt. 36-8. The Letter states, in relevant part:

> Please be advised that my law firm represents [Plaintiff]. Please direct all further communications regarding this matter to my attention. Please do not attempt, directly or indirectly, to communicate with [Plaintiff].

*Id.* In the Letter, O'Hanlon alleged that CKJ Trucking wrongfully denied Plaintiff worker's compensation for his foot injury and requested that CKJ Trucking contact O'Hanlon within fourteen days of its receipt of the Letter. *See id.* at 1–2. CKJ Trucking never contacted O'Hanlon. *See* Dkt. 45-3 at 5. Upon receipt of the Letter, CKJ Trucking's HR Director, Ginger Kennemer ("Kennemer"), informed all of Plaintiff's supervisors to cease any further communications with Plaintiff pursuant to the Letter. *See id*.

Plaintiff contends his doctor released him to return to work on December 20, 2017. *See* Dkt. 45-6 at 14. On December 19, 2017, Plaintiff went to the CKJ Trucking office to pick up his Christmas bonus and give CKJ Trucking his medical release. *See* Dkt. 45-6 at 14, 19. When Plaintiff went to the driver's lounge, he alleges he no longer had a mailbox. *Id*. at 14–15. When Plaintiff asked Rick Russell ("Russell"), the terminal manager, why he no longer had a mailbox, Plaintiff was directed to talk to Mike Downs ("Downs"), his district supervisor. *Id*. at 14–16. Plaintiff claims he asked Russell if he was fired or laid off, but Russell only told Plaintiff that he had to talk to Downs and had to leave the office. *Id*. at 16; Dkt. 45-5 at 4. Before he left the CKJ Trucking office, Plaintiff claims he told Russell he had a medical release to "return to work with

no restrictions," and allegedly gave Russell the work release. Dkt. 45-6 at 18–19; Dkt. 55-1. The same day, Russell emailed Downs and Kennemer to tell them that Plaintiff had come to the office. *See* Dkt. 36-9. In the email, Russell informed Kennemer and Downs of what he said to Plaintiff, adding that he and others in the office "didn't want to say the wrong thing so [they] were very careful," because Plaintiff "put [them] in a bad situation and hopefully [they] won't have to deal with him again." *Id*. When Plaintiff called Downs the next day and asked if he still had a job, Downs told him he could not talk to him because Plaintiff had an attorney. *See* Dkt. 45-6 at 16; Dkt. 45-4 at 5. After he talked to Downs, Plaintiff claims he went to O'Hanlon's office. *See* Dkt. 36-2 at 36–37. Plaintiff further testified that he is no longer represented by O'Hanlon. *See id*. at 37. After December 19, 2017, Plaintiff never returned to the CKJ Trucking office, and Plaintiff and Defendants did not have any further contact, directly or through O'Hanlon, until this suit was filed. *See* Dkt. 45-6 at 17.

On March 28, 2019, CKJ Transport, as the successor of CKJ Trucking, terminated Plaintiff for "job abandonment." Dkt. 45-3 at 9. Despite Plaintiff having not worked for CKJ Trucking since December 2017, Kennemer testified that CKJ Trucking, and subsequently CKJ Transport, continued to pay for Plaintiff's health insurance benefits. *See* Dkt. 44-3 at 12. While he was on FMLA leave and prior to March 28, 2019, Kennemer testified CKJ Trucking considered Plaintiff's status as "inactive." *Id*. at 8.[2] Kennemer filed the personnel termination for Plaintiff because Defendants "were spending a lot of money on [Plaintiff's] benefits." Dkt. 44-3 at 12. Though the termination form says that Plaintiff is eligible for rehire, CKJ Trucking would have required Plaintiff to provide documentation modifying the directive in O'Hanlon's Letter before Plaintiff would have been allowed to return to work. Dkt. 45-3 at 9, 22.

---

[2] "Inactive status" is not described anywhere in the CKJ Trucking or CKJ Transport policy manual. *See* Dkt. 44-3 at 8.

In an Application for Unemployment Benefits with the Texas Workforce Commission in January 2018, Plaintiff indicated that he was no longer employed because he "quit due to medical reasons." *See* Dkt. 36-11 at 3. The Texas Workforce Commission then made a finding that Plaintiff quit his job because of his "medically verifiable illness." *See* Dkt. 36-14 at 1. On July 25, 2018, Plaintiff completed a patient intake form for the Family Care Clinic, stating that he was "retired." *See* Dkt. 36-15 at 2. Plaintiff again stated that he was "retired" on medical records for the Texoma Medical Center on August 24, 2018. *See* Dkt. 36-16 at 4.

Plaintiff has not worked anywhere since working for CKJ Trucking. Dkt. 36-2 at 43–44. Plaintiff asserts that he has sought employment from several companies; however, he has not sought employment as a truck driver, as Plaintiff does not want to continue in that occupation. Dkt. 36-2 at 17–18.

Plaintiff claims his only remaining limitation from his heart condition is "shortness of breath." Dkt. 45-6 at 20. On February 26, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC Charge"), alleging he had been discharged by CKJ Trucking because of his disability in December 2017. *See* Dkt. 36-13. On May 1, 2019, Plaintiff filed a second EEOC Charge, alleging that he was discharged from "inactive" status on March 28, 2019. *See* Dkt. 36-17 at 3.

## II.  <u>LEGAL STANDARD</u>

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999).  The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show there is a genuine issue for trial. *Stults*, 76 F.3d at 655. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. TEX. LOCAL R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Stults*, 76 F.3d at 655.

## III. <u>ANALYSIS</u>

### A. FAILURE TO REASONABLY ACCOMMODATE CLAIM

Defendants move for summary judgment on Plaintiff's claim that he was denied reasonable accommodation under the ADA, arguing Plaintiff has failed to exhaust administrative remedies

and has not raised a genuine issue of material fact regarding any element of his *prima facie* case. *See* Dkt. 36 at 22–26; Dkt. 40 at 13.

Title I of the ADA, 42 U.S.C. §§ 12101–13, prohibits discrimination against an employee on the basis of physical or mental disability and requires an employer to make reasonable accommodations necessary to allow an employee with a disability to perform the essential functions of his job unless the accommodation would impose an undue hardship on the employer. Section 12112(a) of the ADA provides that no covered entity shall "discriminate" against a qualified individual with a disability because of the disability of such an individual in regard to, *inter alia*, "the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment."   In addition, Section 12112(b)(5) states that the term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operations of the business of such covered entity."

### 1.   Exhaustion of Administrative Remedies

A plaintiff must comply with the ADA's administrative remedies prior to commencing an action in federal court against his employer for violations of the ADA. *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996). Because the ADA incorporates by reference the procedures applicable to Title VII actions, one of these administrative prerequisites is filing a charge with the EEOC. *Id.*; 42 U.S.C. § 12117(g); *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) (explaining the administrative remedies under Title VII). However, merely filing any EEOC charge is insufficient, since the scope of the lawsuit "is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of

discrimination." *Young v. City of Houston, Tex.*, 906 F.2d 177, 179 (5th Cir. 1990) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). In determining whether a plaintiff has exhausted a particular claim, the Fifth Circuit has noted "the scope of an EEOC complaint should be construed liberally." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). Courts are to "look slightly beyond [the EEOC charge's] four corners, to its substance rather than its label." *Id*. at 789.

Defendants allege Plaintiff failed to exhaust administrative remedies because his EEOC Charge does not declare a failure to accommodate claim. *See* Dkt. 36 at 22. Plaintiff notes that there is not a separate box for failure to accommodate on the EEOC Charge form and argues that he checked the box for disability discrimination and stated sufficient facts in his EEOC Charge complaint from which to assert a failure to accommodate claim by alleging CKJ Trucking refused to communicate with him about an accommodation upon his return to work. *See* Dkt. 45 at 8–9; Dkt. 36-13. The Fifth Circuit has stated that employers have a "statutory duty to at least discuss accommodation." *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 699 (5th Cir. 2014) (citing *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 622 (5th Cir. 2009)). In *LHC Group*, the plaintiff reached out to her supervisor about a possible accommodation, who "kept silent and walked away." *See id*. at 700. There, the Fifth Circuit held that a reasonable jury could conclude the plaintiff was denied an interactive process. *See id*. Similarly, Plaintiff alleged in his EEOC Charge that CKJ Trucking refused to communicate with him when he returned to work, allowing Plaintiff no chance to seek a reasonable accommodation. *See* Dkt. 36-13. In looking to the substance of the EEOC Charge and construing it liberally, the Court finds Plaintiff alleged enough facts in his EEOC Charge that the EEOC could investigate a failure to accommodate claim. Therefore, Plaintiff has exhausted his administrative remedies as to his failure to accommodate claim.

## 2.  Failure to Accommodate *Prima Facie* Case

A plaintiff making a failure to accommodate claim must prove the following elements: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)).

Under the ADA, a "qualified individual" is an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The relevant regulation further defines a "qualified individual with a disability" as an individual with a disability "who satisfies the requisite skill, experience, education and other job-related requirements of the employment position and . . . can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). Courts must determine whether the individual was qualified at the time he suffered the adverse action. *See Fuentes v. Krypton Solutions, LLC*, No. 4:11-cv-581, 2013 WL 1391113, at *4 (E.D. Tex. Apr. 4, 2013).

Defendants argue Plaintiff could not have performed the essential functions of the job as of December 19, 2017, and hence is not a 'qualified individual with a disability,' because Plaintiff did not have a valid Medical Certification and valid Commercial Driver's License ("CDL"). *See* Dkt. 36 at 24. Plaintiff's Medical Certificate expired on September 26, 2017, while Plaintiff was on FMLA leave, and thus, Plaintiff possessed neither a Medical Certificate nor a valid CDL. *See* Dkt. 36-7; Dkt. 36-2 at 10-12. However, Plaintiff has presented evidence that it was CKJ Trucking's policy to schedule and pay for its drivers to obtain a new Medical Certificate when their Medical Certificate was set to expire so that their CDL remained valid. *See* Dkt. 45-5 at 5–6.

CKJ Trucking did not follow this policy with Plaintiff, as he was on leave during that time. *See* Dkt. 36-2 at 13. While there is no guarantee that Plaintiff would have been cleared for a Medical Certification by the company doctor, the Court must view the evidence in the light most favorable to Plaintiff. Plaintiff presented a medical release from a doctor clearing him to return to work with no restrictions. *See* Dkt. 55-1. Therefore, the Court finds there is a genuine issue of material fact as to whether Plaintiff was a qualified individual.

"Disability" has three possible definitions under the ADA: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). An employer "need not provide a reasonable accommodation or reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability" solely by being "regarded as" having an impairment. *Id*. at 12201(h). The ADA further defines "major life activities" as including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. at § 12102(2)(A). Further, the definition of "disability" "shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted" and the term "substantially limits" "shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008." *Id*. at § 12102(4).

Defendants argue Plaintiff cannot claim to have an impairment that substantially limits a major life activity requiring reasonable accommodation because Plaintiff has provided no evidence of how he is substantially limited in a major life activity. *See* Dkt. 36 at 27–28. Under the ADA, "breathing" is considered a major life activity. *See* 42 U.S.C. § 12102(2)(A). Plaintiff testified that

he still suffers from "shortness of breath" as part of his disability.[3] Dkt. 45-2 at 2; Dkt. 45-6 at 20.

The EEOC has cautioned that "substantially limits" is "not meant to be a demanding standard," as

the test is whether the impairment "substantially limits the ability of an individual to perform a

major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1).

Further, the definition of "disability" is to be broadly construed in favor of broad coverage of

individuals. *See* 42 U.S.C. § 12102(4).

Plaintiff has not provided any evidence, beyond his statement that he suffers from

"shortness of breath," to show that this substantially limits his ability to breathe as compared to

most people in the population. *See* Dkt. 45-2 at 2. A plaintiff "must adduce evidence of an

impairment that has actually and substantially limited the major life activity on which he relies."

*Waldrip v. General Electric Co.*, 325 F.3d 652, 656 (5th Cir. 2003). Like the plaintiff in *Waldrip*,

Plaintiff has offered merely a conclusory statement that he suffers from shortness of breath. *See*

*id.* at 656–57; Dkt. 45-2 at 2. While the plaintiff in *Waldrip* provided testimony that he had to

"occasionally" miss work due to his condition, Plaintiff instead received a full release to return to

work without any restrictions. *See Waldrip*, 325 F.3d at 657; Dkt. 55-1. Additionally, Plaintiff

testified that he did not require any accommodation to return to work. *See* Dkt. 36-2 at 45–46.

Therefore, the Court finds Plaintiff has failed to present evidence for a reasonable jury to find he

---

[3] In his affidavit, Plaintiff stated: "I was diagnosed with severe atherosclerosis, hypertension, hyperlipidemia, coronary artery disease, peripheral vascular disease, and a history of deep vein thrombosis," but he has provided no medical evidence to support this statement. Dkt. 45-2 at 2. Defendants filed an Objection to this statement, arguing it is inadmissible hearsay. *See* Dkt. 47. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In the statement in his affidavit, Plaintiff "is not describing his symptoms or even referring to statements made to a physician for the purposes of diagnosis and treatment, which would trigger an exception to the hearsay rule; instead [Plaintiff] is recounting his own medical diagnoses," to which Plaintiff has no personal knowledge. *Pfister v. City of San Antonio*, No. SA-13-CA-1100-FB, 2015 WL 13796517, at *5 (W.D. Tex. June 3, 2015). Because this statement is offered for the truth of the matter asserted, is not based on personal knowledge, and no exception to the hearsay applies, the Court finds the statement is inadmissible. Accordingly, the Court has not considered the statement in deciding the Motions.

suffers from a physical impairment which substantially limits a major life activity. While there is a genuine issue of material fact as to whether Plaintiff is "qualified," because Plaintiff has failed to establish that he has a disability, Plaintiff has not established the first element of his *prima facie* case.

Second, Defendants claim CKJ Trucking could not have known of any limitations that Plaintiff may have had, as Plaintiff claims he received a full medical release from his doctor. *See* Dkt. 36 at 25–26. Plaintiff argues that CKJ Trucking did not know of Plaintiff's limitations because it refused to speak to Plaintiff. *See* Dkt. 45 at 10. In his deposition, however, Plaintiff specifically testified that he was released to return to work with no limitations, and Plaintiff further testified that he did not need any reasonable accommodation. *See* Dkt. 36-2 at 28, 45–46. Because Plaintiff testified that he did not have any limitation, and hence did not need any accommodation, the Court finds that Plaintiff has failed to establish a genuine issue of material fact as to whether his alleged disability and its limitations were known to CKJ Trucking. Thus, Plaintiff has failed to establish the second element of his *prima facie* case.

Third, Defendants claim CKJ Trucking could not have failed to make a reasonable accommodation for limitations Plaintiff did not actually have. *See* Dkt. 36 at 25–26. According to Defendants, because Plaintiff claims he received a full medical release from his doctor, Plaintiff did not need an accommodation to do his job. *See id*. at 25. Plaintiff asserts the reasonable accommodation he sought was "to be able to see a physician and be medically recertified to renew his CDL since it had lapsed while [Plaintiff] was on FMLA leave."[4] Dkt. 45 at 10.

---

[4] Defendants argue Plaintiff claimed he sought a different reasonable accommodation in his interrogatory responses and is thus precluded from asserting this accommodation. *See* Dkt. 36-3 at 7 (In response to being asked which accommodation he contends CKJ Trucking should have provided, stating "Defendant refused to return Plaintiff to work though he presented a full release to return to work from his physician."). Because the Court finds that neither asserted reasonable accommodation is valid, the Court will not address whether Plaintiff is precluded from asserting the need for the accommodation of obtaining his medical certification.

The ADA provides that a "reasonable accommodation" can include "appropriate adjustment or modifications of examinations, training materials or policies, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). The relevant regulations further define "reasonable accommodation" as a modification or adjustment "that enable[s] a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(iii). However, it is only a violation of the ADA for an employer to fail to make "reasonable accommodations to the known *physical or mental limitations* of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A) (emphasis added).

Even if the Court were to find that Plaintiff suffers from a physical impairment that substantially limits a major life activity, Plaintiff has not asserted a valid reasonable accommodation which CKJ Trucking failed to provide. Plaintiff's suggested reasonable accommodation—that he be allowed medical recertification—is not an accommodation to a physical or mental limitation; rather, it is a technical requirement for Plaintiff to become a qualified individual as a truck driver. Moreover, Plaintiff testified that he did not need any accommodation to return to work. *See* Dkt. 36-2 at 45–46. Therefore, the Court finds that Plaintiff has not established a genuine issue of material fact as to whether CKJ Trucking failed to make a reasonable accommodation. As Plaintiff has failed to establish a genuine issue of material fact as to the elements of his *prima facie* case, summary judgment as to Plaintiff's failure to reasonably accommodate claim should be **GRANTED**.

## B.  AMERICANS WITH DISABILITY ACT DISCRIMINATION CLAIM

Defendants move for summary judgment on Plaintiff's claim that he was discharged because of his disability in violation of the ADA, on the grounds that Plaintiff has not presented

evidence to raise a genuine issue of material fact as to any of the elements of his *prima facie* case. *See* Dkt. 36 at 27–34; Dkt. 40 at 14.

In a discriminatory termination action under the ADA, the employee may either present direct evidence that he was discriminated against because of his disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a Title VII case. *See LHC Group*, 773 F.3d at 694 (internal citations omitted). Under the modified *McDonnell Douglas* approach, a plaintiff must demonstrate a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. To make his *prima facie* case, a plaintiff must establish: (1) he is disabled within the meaning of the ADA; (2) he is qualified and able to perform the essential functions of his job; and (3) he suffered an adverse action because of his disability. *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010) (citing *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir.1999)). If the plaintiff succeeds in establishing his *prima facie* case, the defendant must articulate a legitimate, nondiscriminatory reason for the termination. *See LHC Group*, 773 F.3d at 694. Finally, the burden shifts back to the plaintiff to show the defendant's proffered reason is pretextual. *See id*. In the summary judgment context, a case of discrimination plus a showing that the proffered reason is pretextual is typically enough to survive summary judgment. *Id*. (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–48, 150 (2000)).

### 1. <u>Individual with a Disability</u>

As set forth above, "disability" is defined under the ADA as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "An individual has a record of a disability if the individual has a history of, or has been

misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). "An individual is 'regarded as having such an impairment' if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity." *Id.* at 1630.2(l)(1).

Defendants argue Plaintiff has failed to present any evidence that he is an individual with a "disability" as defined by the ADA. *See* Dkt. 36 at 27. As discussed above, the Court finds that Plaintiff has not presented evidence from which a jury could conclude that Plaintiff suffers from a physical impairment which substantially limits a major life activity under the first definition of "disability." *See* 29 C.F.R. § 1630.2(k)(1). Therefore, the Court will analyze whether Plaintiff has a disability under the remaining statutory definitions.

Plaintiff claims there is a record of his disability because Plaintiff was approved for short-term disability benefits by CKJ Trucking's insurance carrier, Mutual of Omaha, and notice was sent to Kennemer. *See* Dkt. 45 at 11. As stated above, Plaintiff has provided no evidence that his "shortness of breath" substantially limits his ability to breathe as compared to most people in the general population, which is required under this definition. *See* 29 C.F.R. § 1630.2(k)(1). Further, Mutual of Omaha terminated Plaintiff's short-term disability as of December 21, 2017, because Plaintiff was cleared to return to work, and Mutual of Omaha provided notice of this to Kennemer. *See* Dkt. 44-6 at 33. Additionally, Plaintiff presented CKJ Trucking with a full medical release from his doctor on December 19, 2017, contradicting any record of disability CKJ Trucking might have had. *See* Dkt. 55-1. Therefore, the Court finds that Plaintiff has not presented evidence that he had a record of his disability as of the date of his termination.

Defendants argue Plaintiff also cannot establish that he is an individual regarded as having

an impairment. *See* Dkt. 36 at 29–30. Plaintiff did not address this definition of "disability" in his response and has not provided the Court with any evidence to support a finding of disability under the "regarded as" definition. *See* Dkt. 45.  Therefore, the Court will not address whether Plaintiff is an individual with a disability under the "regarded as" definition. The Court finds Plaintiff has not met his burden as to the first element of his *prima facie* case.

### 2.  Individual is Otherwise Qualified

Second, Defendants argue that even if Plaintiff had a disability, Plaintiff has not presented evidence that he was "otherwise qualified," as Plaintiff did not have a valid CDL and Medical Certification as of December 19, 2017. *See* Dkt. 36 at 30. As discussed above, Plaintiff has established a genuine issue of material fact as to whether he was "otherwise qualified," because it was CKJ Trucking policy to schedule and pay for re-certifying its drivers. Because Plaintiff's certification expired while Plaintiff was on leave, Plaintiff has established a fact issue as to the second element of his *prima facie* case.

### 3.  Adverse Action

For employment discrimination claims under the ADA, the Fifth Circuit has held that adverse employment actions "include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).

Defendants argue Plaintiff did not suffer an adverse action, as Plaintiff has not produced any evidence that he was discharged in December 2017. *See* Dkt. 36 at 32. Rather, Defendant contends that Plaintiff was not terminated until March 28, 2019. *See* Dkt. 45-3 at 22. Plaintiff asserts he has produced evidence that CKJ Trucking refused to restore Plaintiff to work in December 2017, and refused to communicate with him thereafter, constituting an adverse action.

*See* Dkt. 45 at 13. Plaintiff further argues that Plaintiff's termination in March 2019 for "job abandonment" constitutes an adverse action. *See id.* Plaintiff provided evidence that CKJ Trucking had removed Plaintiff's mailbox from its office as of December 2017. *See* Dkt. 45-6 at 14–15. Plaintiff further stated that CKJ Trucking employees refused to communicate with him about his return to work. *See* Dkt. 45-2 at 2. Kennemer testified that she instructed employees not to contact Plaintiff because of O'Hanlon's Letter, and CKJ Trucking did not believe it was legally obligated to contact O'Hanlon as directed in the Letter. *See* Dkt. 45-3 at 9. Kennemer further testified that Plaintiff would not have been allowed to return to work without modifying the Letter sent by O'Hanlon, though CKJ Trucking never communicated that requirement to Plaintiff. *See* Dkt. 45-3 at 9–10.

In contrast, Plaintiff testified that he was never told that he was discharged. *See* Dkt. 36-2 at 7. Plaintiff further testified that he just assumed he did not have a job after going to the CKJ Trucking facility on December 19, 2017. *See id.* at 44. Plaintiff stated that when he talked to Downs, Downs specifically told him he could not talk to Plaintiff because Plaintiff had an attorney. *See id.* at 34. Plaintiff never returned to the CKJ Trucking office, and Plaintiff never contacted Defendants, directly or through O'Hanlon, until this suit was filed. *See* Dkt. 45-6 at 17. Additionally, Kennemer testified that CKJ Trucking, and subsequently CKJ Transport, continued to pay for Plaintiff's health insurance benefits through March 28, 2019. *See* Dkt. 44-3 at 12. Further, Plaintiff told the Texas Workforce Commission that he was no longer employed because he "quit due to medical reasons." *See* Dkt. 36-11 at 3. Plaintiff also told multiple medicals centers that he was "retired." *See* Dkt. 36-15 at 2; Dkt. 36-16 at 4.

Plaintiff's subjective belief that he was discharged is not enough to survive summary judgment. *See Stout v. Vincent*, 717 F.App'x 468, 470–71 (5th Cir. 2018) ("The nonmovant's

burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.") (quotations omitted). Further, courts have found jury instructions stating, "[m]ere dirty looks or reluctance of co-workers to speak to an employee are not the types of adverse employment action prohibited by Title VII," to be proper. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). No jury could reasonably find that Plaintiff was discharged by CKJ Trucking in December 2017. Therefore, the Court finds that CKJ Trucking's actions do not constitute an adverse action under the ADA.

Plaintiff argues Defendants also took adverse action when CKJ Transport terminated Plaintiff on March 28, 2019, for "job abandonment." *See* Dkt. 45 at 13. An adverse employment action must be a "tangible employment action that constitutes a significant change in employment status." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Here, Plaintiff acknowledges that by March 28, 2019, he had not worked for CKJ Trucking for over a year (and Plaintiff had not physically worked for CKJ Trucking since July 14, 2017). *See* Dkt. 45-6 at 8, 17. After December 19, 2017, Plaintiff told various doctor's offices he was "retired," and he told the Texas Workforce Commission he "quit for medical reasons." *See* Dkt. 36-15 at 2; Dkt. 36-16 at 4; Dkt. 36-11 at 3. Therefore, a jury could not reasonably conclude that CKJ Transport's termination of Plaintiff on March 28, 2019, was an adverse employment action, as it did not change Plaintiff's employment status with Defendants. Thus, the Court finds Plaintiff has not established the third element of his *prima facie* case as to Defendants' actions in December 2017, or on March 28, 2019.

### 4. <u>Treated Less Favorably Than Others</u>

Fourth, Defendants argue Plaintiff failed to produce any evidence of a similarly situated person outside his protected class being treated more favorably. *See* Dkt. 36 at 32. However, the Fifth Circuit has declined to require plaintiffs to provide evidence of those similarly situated as part of the *prima facie* case, as that "requires plaintiffs to prove causation twice." *LHC Group*, 773 F.3d at 696. Further, this requirement is considered at odds with the underlying purpose of the anti-discrimination legislation. *Id*. Therefore, the Court need not decide if Plaintiff has produced evidence of a similarly situated person outside his protected class being treated more favorably.

### 5. <u>Legitimate, Nondiscriminatory Reason and Pretext</u>

Lastly, Defendants argue that even if Plaintiff had met his burden on all elements of his *prima facie* case, CKJ Trucking had a legitimate, nondiscriminatory reason for not allowing Plaintiff to return to work in December 2017. *See* Dkt. 49 at 9–10. Defendants further argue Plaintiff has not shown any evidence as to why that reason is pretextual. *See id*.

A plaintiff rebutting a nondiscriminatory reason offered by an employer must "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id*. at 579 (quotations omitted). Courts must ask if the offered reason was the "real reason" for the adverse employment action. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015).

Even if Plaintiff had established a *prima facie* case of discrimination, Defendants have established a legitimate, nondiscriminatory reason for not communicating with Plaintiff about returning him to work: O'Hanlon's Letter directed CKJ Trucking not to contact Plaintiff or have

any communication with him. *See* Dkt. 49 at 10; Dkt. 36-8. Because Plaintiff has failed to present any evidence to show that Defendants' legitimate, nondiscriminatory reason is pretextual, the Court will not analyze whether Defendants would have discharged Plaintiff but for O'Hanlon's Letter.

For all of the foregoing reasons, summary judgment should be **GRANTED** as to Plaintiff's claim of discrimination in violation of the ADA.

## C.  FMLA RETALIATION CLAIM

Defendants move for summary judgment on Plaintiff's claim that Defendants retaliated against him in violation of the FMLA, arguing Plaintiff was not able to return to work at the end of twelve weeks, and has not presented evidence to support the second or third elements of his *prima facie* case. *See* Dkt. 36 at 34–35; Dkt. 40 at 14.

The FMLA entitles employees to take leave for "serious health condition[s]" and prohibits employers from using the taking of FMLA leave as a negative factor in deciding employment benefits. *See* 29 U.S.C. §§ 2612, 2614. There are two distinct theories of recovery under the FMLA: the "entitlement" or "interference" theory arising from 29 U.S.C. § 2615(a)(1), and the "retaliation" or "discrimination" theory arising from 29 U.S.C. § 2615(a)(2). *See Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 346 (5th Cir. 2013).

### 1.  <u>Interference Claim</u>

Defendants contend Plaintiff cannot bring an interference claim under the FMLA because Plaintiff received the full benefit of twelve weeks FMLA leave. *See* Dkt. 36 at 34; Dkt. 40 at 16–17. However, the Court does not read Plaintiff's Amended Complaint or either of Plaintiff's responses to the Motions to state that Plaintiff intended to assert an interference claim under the FMLA. Plaintiff's Amended Complaint states that Defendants' conduct constitutes a violation of

the FMLA, which "protect[s] Plaintiff from *retaliation* in violation of the same." Dkt. 34 at 4 (emphasis added). While the Amended Complaint states that CKJ Trucking failed to restore Plaintiff to his position at the expiration of his FMLA leave, Plaintiff's responses to the Motions address only a retaliation claim under the FMLA. *See* Dkt. 45 at 14–16. Therefore, the Court will analyze only the FMLA retaliation claim.[5]

### 2. Retaliation *Prima Facie* Case

"To establish a *prima facie* case for discrimination or retaliation under the FMLA, the plaintiff must demonstrate: (1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave." *Bocalbos v. National Western Life Ins. Co.,* 162 F.3d 379, 383 (5th Cir. 1998); *see also Stokes v. Dallas Cnty Juvenile Dep't,* 509 F. App'x 319, 322 (5th Cir. 2013). If the plaintiff proves a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for the termination. *See Bocalbos,* 162 F.3d at 383. If the defendant makes that showing, the burden shifts back to the plaintiff to "show by a preponderance of the evidence that the employer's reason is a pretext for discrimination or retaliation." *Id.*

Defendants argue Plaintiff's retaliation claim under the FMLA should fail because Plaintiff was not medically able to return to work at the end of twelve weeks and has not presented evidence that he suffered a materially adverse action for which there is a causal connection with Plaintiff taking FMLA leave. *See* Dkt. 36 at 34–35; Dkt. 40 at 19–23.

---

[5] Even if Plaintiff had brought an interference claim under the FMLA, summary judgment should be **GRANTED** as to that claim, as Plaintiff testified that he was medically unable to return to work at the end of twelve weeks. *See* Dkt.36-2 at 24; *Hunt v. Rapides Healthcare Sys., LLC,* 277 F.3d 757, 763 (5th Cir. 2001) ("If an employee fails to return to work on or before the date that FMLA leave expires, the right to reinstatement also expires."), *abrogated on other grounds by Wheat v. Fla. Par. Juvenile Comm'n,* 811 F.3d 702 (5th Cir. 2016).

First, Defendants contend Plaintiff was not entitled to reinstatement to his former position upon return from leave because he was afforded more than the twelve weeks of leave required under the FMLA. *See* Dkt. 36 at 34; Dkt. 40 at 15–20. However, the FMLA's retaliation and discrimination protections encompass "the employer's conduct both during and after the employee's FMLA leave." *Hunt*, 277 F.3d at 768–69. Fifth Circuit precedent allows a plaintiff to bring FMLA retaliation claims even when he has exhausted all of his entitled leave under the FMLA. *See Amsel v. Texas Water Development Bd.*, 464 F. App'x 395, 401 (5th Cir. 2012) ("[Plaintiff's] past use of FMLA leave is protected activity sufficient to surpass the first *prima facie* element even though [plaintiff] was not an 'eligible employee,' 29 U.S.C. § 2611(2), at the time of his discharge."). Therefore, the Court finds Plaintiff's retaliation claim under the FMLA is not barred solely because Plaintiff took more than twelve weeks of leave.

Second, Defendants argue Plaintiff has not produced evidence that he was subject to an adverse action in December 2017. *See* Dkt. 36 at 35; Dkt. 40 at 14. As discussed above, the Court finds Plaintiff has failed to establish a genuine issue of material fact as to whether CKJ Trucking's actions in December 2017, or CKJ Transport's actions on March 28, 2019, constituted an adverse employment action under the ADA. However, the standard for an adverse action under the FMLA is different, as "[m]aterially adverse actions are not limited to ultimate employment decisions but include any actions that would dissuade a reasonable employee from exercising his rights under the FMLA." *Lushute v. Louisiana, Dept. of Social Services*, 479 F.App'x 553, 555 (5th Cir. 2012).

Even under the lower standard for "adverse action" under the FMLA, Plaintiff has not established a genuine issue of material fact as to whether CKJ Trucking's actions in December 2017, constituted a materially adverse employment action. As stated above, Plaintiff's subjective belief that he was discharged is not enough to prove an adverse action occurred. *See Stout*, 717

F.App'x at 470–71. Further, the Fifth Circuit has found that "ostracism and isolation in the workplace does not rise to the level of material adversity." *Halliburton Co. v. Administrative Review Bd.*, 596 F.App'x 340, 341 (5th Cir. 2015). Therefore, the Court finds CKJ Trucking's refusal to communicate with Plaintiff in December 2017, particularly in light of O'Hanlon's directive to not communicate with Plaintiff, does not constitute an adverse action under the FMLA.

Additionally, no jury could reasonably find CKJ Transport's actions on March 28, 2019, constituted an adverse employment action under the FMLA. As stated above, CKJ Transport's termination of Plaintiff on March 28, 2019, did not change Plaintiff's employment status, as he had not worked for Defendants for over a year and had previously been on leave for a total of twenty-four weeks. *See* Dkt. 45-6 at 8. As Plaintiff had already filed a lawsuit alleging Defendant terminated him on December 19, 2017, CKJ Transport could not have dissuaded Plaintiff from either taking FMLA leave or filing a lawsuit under the FMLA by terminating Plaintiff on March 28, 2019. Therefore, the Court finds that this does not constitute a materially adverse action under the FMLA. Thus, Plaintiff has not met his burden as to the second element of his *prima facie* case.

Lastly, Defendants contend Plaintiff cannot prove a causal connection exists between his FMLA leave and the alleged adverse action. *See* Dkt. 36 at 35; Dkt. 40 at 14. Plaintiff argues CKJ Trucking refused to reinstate him immediately after his use of FMLA leave and terminated him after he filed this lawsuit, thus showing a causal connection. *See* Dkt. 45 at 15.

The causal inquiry only looks to whether the employer retaliated against the plaintiff for his FMLA-protected conduct. *See Amsel*, 464 F. App'x at 401. A plaintiff needs "to raise a fact question showing that the protected activity was not 'wholly unrelated' to his discharge." *Amsel*, 464 F. App'x at 402 (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 647, 684 (5th Cir. 2001)). Courts may accept temporal proximity as evidence of a causal connection; however, timing alone

will not always be enough. *See id.* at 401–02; *see also Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'").

Even if Plaintiff had established that Defendants' actions in December 2017, or on March 28, 2019, constituted adverse actions under the FMLA, Plaintiff has not established a causal connection between either alleged adverse action and Plaintiff's FMLA leave. Plaintiff's own testimony negates any argument that a causal connection exists, as Plaintiff stated that he did not believe Defendants did not let him come back to work on December 19, 2017, because of his use of FMLA leave. *See* Dkt. 36-2 at 50. As to Plaintiff's termination on March 28, 2019, Plaintiff had not worked for Defendants in over a year and had filed this suit approximately four months prior to his termination. CKJ Transport's termination did not constitute an adverse action, and there are not facts sufficient for a jury to find a causal connection between the termination and Plaintiff's rights under the FMLA. Therefore, the Court finds Plaintiff has not established a genuine issue of material fact as to the third element of his *prima facie* case.

### 3. Legitimate, Nonretaliatory Reason and Pretext

Even if Plaintiff had established a *prima facie* case of retaliation, Defendants have established a legitimate, nonretaliatory reason for not communicating with Plaintiff about returning him to work: the directive in O'Hanlon's Letter not to communicate with Plaintiff. *See* Dkt. 49 at 10; Dkt. 36-8. Further, Defendants have established a legitimate, nonretaliatory reason for terminating Plaintiff on March 28, 2019: Plaintiff had not worked for Defendants for over a year, had been on FMLA leave for twenty-four weeks prior to December 19, 2017, and Defendants

were still paying for Plaintiff's health insurance benefits. *See* Dkt. 36-2 at 15–16; Dkt. 44-3 at 12. Because Plaintiff has failed to present any evidence to show that Defendants' legitimate, nonretaliatory reason is pretextual, the Court will not analyze whether either proffered reason is false.

For the reasons previously stated, summary judgment as to Plaintiff's FMLA retaliation claim should be **GRANTED**.

### D.  PLAINTIFF'S DAMAGES

Defendants argue summary judgment is necessary as to Plaintiff's claim for back and front pay because Plaintiff failed to mitigate his damages by seeking comparable employment. *See* Dkt. 40 at 7; Dkt. 36 at 27. Because the Court finds summary judgment should be granted as to all of Plaintiff's claims, the Court need not address whether Plaintiff failed to mitigate his damages.[6]

## IV.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends CKJ Trucking's Motion (Dkt. 36) be **GRANTED**, and Defendants' Motion (Dkt. 40) be **GRANTED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). The parties are directed to Local Rule CV-72(c) for page limitations on objections.

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report

---

[6] As the Court will not address Plaintiff's claims for back and front pay, the Court need not address Plaintiff's objections to Defendants' summary judgment evidence regarding available comparable employment. *See* Dkt. 45 at 17.

shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 7th day of February, 2020.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE