UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID W. SPINDLE | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:18-CV-818 |
| | § | |
| CKJ TRUCKING, LP, ET AL. | § | |

## MEMORANDUM OPINION & ORDER ADOPTING MAGISTRATE COURT'S REPORTS IN PART AND AS MODIFIED, GRANTING SUMMARY JUDGMENT, AND DENYING SANCTIONS

Plaintiff David Spindle alleges that he is disabled and that his former employer, CKJ Trucking, LP and its successor, CKJ Transportation of North Texas, LLC (collectively, "CKJ") failed to provide reasonable accommodation for and discriminated on the basis of his disability, both in violation of the Americans with Disabilities Act ("ADA"). Spindle further alleges that CKJ interfered with his rights under the Family and Medical Leave Act ("FMLA") and retaliated against him for exercising those rights, both in violation of the FMLA.

Three motions are pending before the Court. The first is Defendant CKJ Trucking, LP's Motion for Summary Judgment, (Dkt. #36), and the second is the CKJ Defendants' Joint Motion for Summary Judgment, (Dkt. #40).[1] The third is Defendants' Motion for Sanctions. (Dkt. #46). The Magistrate Court issued two reports on these motions. The first report addressed the two motions for summary

---

[1] Defendant CKJ Trucking, LP filed the first motion for summary judgment when it was the only defendant in Spindle's original complaint. *See* (Dkt. #1). Shortly thereafter, the Magistrate Court granted leave to file Spindle's First Amended Complaint, (Dkt. #37), which added Defendant CKJ Transportation of North Texas, LLC, *see* (Dkt. #34). The CKJ Defendants then jointly filed the second motion for summary judgment as to Spindle's First Amended Complaint. (Dkt. #40).

-1-

judgment, recommending that they both be granted. (Dkt. #84). Defendants timely filed an objection, (Dkt. #87), to which Spindle responded, (Dkt. #88). The second report addressed the motion for sanctions, recommending that it be denied. (Dkt. #85). Neither party filed objections to this report.

The Court, having reviewed the record and the applicable law, adopts both reports in part and as modified, consistent with the reasoning set forth herein.

## I. MOTIONS FOR SUMMARY JUDGMENT

### A. ADA Reasonable-Accommodation Claim

#### 1. The Magistrate Court's Report

The Magistrate Court recommends granting summary judgment on Spindle's ADA reasonable-accommodation claim. In its report, the Magistrate Court concluded that Spindle exhausted administrative remedies in the EEOC but that CKJ showed that there is no genuine dispute as to any material fact and that CKJ is entitled to judgment as a matter of law.

#### 2. The Court's Modifications

The Court adopts the Magistrate Court's recommendation to grant summary judgment as to Spindle's ADA reasonable-accommodation claim. The Court writes separately, however, to provide the following modifications. First, the Court concludes that Spindle did not exhaust administrative remedies in the EEOC. Second, the Court elaborates on the report's discussion of Spindle's status as a "qualified individual with a disability."

Spindle's ADA reasonable-accommodation claim must be dismissed because Spindle failed to exhaust his administrative remedies as required by law. To proceed with ADA claims in federal court, a plaintiff must first exhaust administrative remedies. *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017). Exhaustion may include filing a charge with the EEOC that provides the basis for an investigation into acts underlying the allegedly unlawful conduct. *Id.* A court will determine whether an EEOC charge exhausts administrative remedies "not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (internal quotation marks omitted).

Here, Spindle's EEOC charge is insufficient to exhaust administrative remedies regarding his ADA reasonable-accommodation claim. Spindle checked only the "disability" box and alleged facts supporting only disability discrimination, briefly stating, "I believe I have been discriminated against based on my disability or perceived disability." (Dkt. #36-13). The charge makes no mention of Spindle requesting reasonable accommodation. *See Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017) ("Employees who require accommodation due to a disability are responsible for requesting a reasonable accommodation."). An EEOC charge alleging only facts supporting a claim of discriminatory discharge does not exhaust a claim of failure to reasonably accommodate. *See, e.g.*, *Windhauser v. Bd. of Supervisors for La. State Univ. & Agr. & Mech. Coll.*, 360 F. App'x 562, 565 (5th Cir. 2010) (per curiam) (unpublished) ("A failure-to-accommodate claim under the ADA is

distinct from a claim of disparate treatment."); *Hamar v. Ashland, Inc.*, 211 F. App'x 309, 309 (5th Cir. 2006) (per curiam) (unpublished) (affirming a district court's dismissal of an ADA reasonable-accommodation claim because the underlying EEOC charge asserted only employment discrimination, and collecting cases); *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) ("Therefore, [failure to reasonably accommodate and disability discrimination] are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability." (citing *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997))). Because the charge did not include allegations sufficient to prompt EEOC investigation into failure to provide reasonable accommodation, and to thereby exhaust administrative remedies, CKJ is entitled to summary judgment on Spindle's ADA reasonable-accommodation claim.[2]

Failure to exhaust administrative remedies, alone, is sufficient to dismiss Spindle's ADA reasonable-accommodation claim. *See, e.g.*, *Miller v. Sw. Bell Tel. Co.*, 51 F. App'x 928, at *6 n.5 (5th Cir. 2002) (per curiam) (unpublished) ("It is well-established that summary judgment may be granted against a non-movant solely on the basis of failure to exhaust administrative remedies." (citing *Inst. for Tech. Dev. v.*

---

[2] Courts in this circuit have reached the same conclusion under similar circumstances. *See, e.g.*, *Robles v. Tex. Tech Univ. Health Scis. Ctr.*, 131 F. Supp. 3d 616, 633–35 (W.D. Tex. 2015) (dismissing failure to accommodate claim for failure to exhaust administrative remedies); *Nash v. City of Houston, Tex.*, No. 4:09-CV-1010, 2011 WL 13253442, at *7 (S.D. Tex. May 6, 2011) (same); *see also Wellington v. Tex. Guaranteed*, No. 13-CA-077, 2014 WL 2114832, at *5–6 (W.D. Tex. May 20, 2014) (acknowledging *Hamar* but dismissing different claims).

*Brown*, 63 F.3d 445, 447 (5th Cir. 1995))). However, even if administrative remedies had been exhausted, the Court adopts the report's reasoning that Spindle's claim otherwise cannot survive summary judgment, and provides additional discussion on Spindle's status as a "qualified individual with a disability."

To succeed on an ADA reasonable-accommodation claim, a plaintiff must show that "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La. Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)). "Disability" has three definitions under the ADA: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

As discussed in the report,[3] Spindle fails to produce a genuine issue of material fact as to any of these definitions and CKJ is entitled to judgment as a matter of law on the issue. As to the first definition, in his own affidavit Spindle identifies as his alleged impairment several diagnosed conditions arising from an aortocardiac bypass surgery. The Court, however, may not consider those diagnoses because they are inadmissible hearsay.

---

[3] The report addresses only the first definition of disability in the section regarding Spindle's ADA reasonable-accommodation claim. The report does not address the other two definitions of disability until the section regarding Spindle's ADA disability-discrimination claim. The report's analysis of each definition is correct, as explained.

Summary-judgment evidence is subject to the same admissibility standard as trial evidence. *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508 (5th Cir. 2008). Under the rules of evidence, an affidavit must be made on personal knowledge. FED. R. EVID. 602. Here, Spindle submits his own affidavit in which he asserts, without other evidentiary support, that he "was diagnosed with severe atherosclerosis, hypertension, hyperlipidemia, coronary artery disease, peripheral vascular disease, and a history of deep vein thrombosis." (Dkt. #45-2). CKJ objected to that assertion, (Dkt. #47 at 4), and the Magistrate Court correctly determined that those assertions are hearsay, *see* (Dkt. #84 at 11–12 & n.3); *see also Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 678 (W.D. Tex. 2015) ("Although Plaintiff's description of his medical *symptoms* is within his personal knowledge and is not hearsay, Plaintiff's own recounting of his medical *diagnoses* and his doctor's orders, offered for proof of those diagnoses and orders, constitutes inadmissible hearsay." (emphasis added)). A diagnosis comes from a doctor who then communicates that diagnosis to its patient, as the passive construction in Spindle's affidavit implies. The doctor's out-of-court statement of Spindle's diagnoses is not subject to an exception. *See, e.g., Portis v. Grand Trunk W. R. Co.*, 28 F.3d 1214, at *5 (6th Cir. 1994) ("In this case, defendant was not trying to admit statements made by plaintiff for the purposes of treatment or diagnosis but rather was trying to admit the medical opinions and diagnoses of doctors who had examined plaintiff. Because these opinions were not statements made for the purposes of diagnosis or treatment, they do not fall within

the hearsay exception of Rule 803(4).").[4] Therefore, Spindle's unsupported statements alleging his own diagnoses are hearsay and may not serve as summary-judgment evidence.

Spindle's only remaining impairment, "shortness of breath," is insufficient. To be sure, breathing is a major life activity. 29 C.F.R. § 1630.2(i)(1)(i). But the conclusory allegation of shortness of breath, without more, is insufficient to establish a substantial limitation on a major life activity, *see Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 37 (5th Cir. 1996) (holding that asbestosis, which reduced the plaintiff's lung capacity by half and caused occasional shortness of breath, was not substantially limiting), particularly where Spindle has failed to provide any examples of shortness of breath or any explanation of how it substantially limits his abilities, *see Lopez-Baca v. Geren*, 599 F. Supp. 2d 744, 754 (W.D. Tex. 2008) (finding no substantial limitation where the plaintiff "provide[d] no evidence of whether those problems were moderate or severe, and provide[d] no examples of when those problems affected his life"). Therefore, Spindle fails to present a sufficient impairment to satisfy the first definition.

Spindle also failed to show that he could meet either of the remaining definitions of disability—record of disability and regarded as disabled. Record of disability requires a "record of an injury or impairment" and that the "impairment limited a major life activity." *Dupre v. Charter Behavioral Health Sys. of Lafayette*

---

[4] *See also Scott v. Turner Indus. Grp., LLC*, No. 3:09-CV-872, 2011 WL 5023842, at *2–3 (M.D. La. Oct. 19, 2011) (same); *Holt v. Olmsted Twp. Bd. of Trustees*, 43 F. Supp. 2d 812, 819 (N.D. Ohio 1998) (same).

*Inc.*, 242 F.3d 610, 615 (5th Cir. 2001). Because Spindle failed to show an impairment limiting a major life activity, he cannot meet this definition either. Moreover, nothing in the record supports a determination that CKJ regarded Spindle as sufficiently impaired. If anything, the record demonstrates the opposite—Spindle himself provided CKJ with a full medical release to begin work upon his return from leave in 2017, *see* (Dkt. #44-6 at 8, 10, 18–19, 22–23), and admitted that his insurer terminated his short-term disability status at that time, *see id.* at 22–23. Lastly, Spindle presents no argument that he satisfies the final definition of disability. And even if he did, the record would demonstrate otherwise for the reasons discussed.

With these modifications, the Court adopts the report's findings of fact, reasoning, and legal determinations on this claim.

## B. ADA Disability-Discrimination Claim

### 1. The Magistrate Court's Report

The Magistrate Court recommends granting summary judgment on Spindle's ADA disability-discrimination claim. In its report, the Magistrate Court concluded that Spindle exhausted administrative remedies in the EEOC but that CKJ showed that there is no genuine dispute as to any material fact and that CKJ is entitled to judgment as a matter of law.

### 2. The Court's Modifications

The Court adopts the Magistrate Court's recommendation to grant summary judgment as to Spindle's ADA disability-discrimination claim. The Court writes separately, however, to provide the following modifications. First, the Court

reiterates that CKJ is entitled to summary judgment on this claim because Spindle failed to show a genuine dispute of material fact regarding his supposed disability and CKJ showed that it is entitled to judgment as a matter of law on this issue, as discussed above. This alone is sufficient to dismiss the claim. Second, the Court elaborates on the report's discussion of "adverse employment action."

Spindle claims that CKJ took an adverse employment action against him by not reinstating him in 2017 and by terminating him in 2019. But CKJ did not take an adverse employment action against Spindle in either instance. Instead, Spindle ceased coming to work under the incorrect assumption that he had been terminated until his status was internally changed to reflect that he voluntarily resigned. The record demonstrates that, as of February 2018, months after returning from leave, Spindle had not resigned or been terminated but was listed as "just inactive" because he did not come to work. (Dkt. #36-10 at 7). It was not until March 2019 that CKJ internally changed Spindle's status from inactive to voluntarily resigned due to "job abandonment," *see* (Dkt. #45-3 at 22), because he had not worked for CKJ since July 2017, *see* (Dkt. #34 at 2–3).

Spindle's conduct confirms the record. Spindle had previously worked for CKJ on two separate occasions, both of which ended because, as Spindle acknowledged, he quit. *See* (Dkt. #36-2 at 4–6). Spindle further admits that, upon his return from leave in 2017, he simply "assumed [he] didn't have a job" because he did not have a driver's box and could not communicate with his superiors. (Dkt. #36-2 at 43–44). Subjective belief in termination is not sufficient to survive summary judgment. *See Little v.*

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ("The nonmovant's burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." (internal quotation marks and citations omitted)). Even so, Spindle's subjective belief was unreasonable because his superiors informed him that they could not speak to him in light of his then-attorney's letter instructing them to "not attempt, directly or indirectly, to communicate with Mr. Spindle." (Dkt. #36-8); *accord* (Dkt. #36-2 at 35–37). At no point was he told that he was fired. (Dkt. #36-2 at 35–37). Moreover, afterwards, Spindle repeatedly stated that he either quit or retired. In January 2018, he filed a claim for unemployment compensation with the Texas Workforce Commission in which he stated that he "quit due to medical reasons." (Dkt. #36-11). Similarly, in July 2018, Spindle stated in a medical record that he was "retired." (Dkt. #40-3 at 10). The record does not support that Spindle suffered an adverse employment action upon return from FMLA leave in 2017 or upon CKJ internally changing his status in 2019.

With these modifications, the Court adopts the report's findings of fact, reasoning, and legal determinations on this claim.

## C. FMLA Claims

### 1. The Magistrate Court's Report

The Magistrate Court recommends granting summary judgment on Spindle's FMLA retaliation claim. In its report, the Magistrate Court concluded that Spindle presented only an FMLA retaliation claim. It further concluded that Spindle failed to

provide a genuine dispute as to any material fact and that CKJ is entitled to judgment as a matter of law. Specifically, applying the *McDonnell Douglas* framework, it concluded that Spindle failed to make out a prima facie case and that, even if he did, he failed to adequately prove that CKJ's legitimate reason for termination was pretextual.

**2. The Court's Modifications**

The Court adopts the Magistrate Court's recommendation to grant summary judgment as to Spindle's FMLA retaliation claim. The Court writes separately, however, to provide the following modifications. First, the Court concludes that Spindle states both an interference and a retaliation claim under the FLMA. Second, the Court explains the grant of summary judgment as to each.

The Court disagrees with the report's determination that Spindle's complaint only asserts a claim of FMLA retaliation. Instead, the complaint alleges both interference and retaliation claims. Spindle first alleged that CKJ "failed to restore Plaintiff to the same or a comparable position of employment upon his return from FMLA leave in December 2017." (Dkt. #34). Alleged deprivation of FMLA rights, including an employee's "entitlement to be restored to their position after going on FMLA leave," is actionable as an interference claim. *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 491 (5th Cir. 2018). Spindle next alleged that CKJ "discharged Plaintiff on or about March 28, 2019 for 'job abandonment' after Defendants failed to restore Plaintiff to the same or a comparable position of employment[.]" (Dkt. #34). Alleged punishment for having exercised FMLA rights, like discharge for taking authorized

-11-

medical leave, is actionable as a retaliation claim. *DeVoss*, 903 F.3d at 491. Therefore, Spindle asserted both claims, and the Court will address each in turn.

Spindle's FMLA interference claim fails because he was medically unable to return to work at the end of the twelve-week leave guaranteed by the FMLA. "The FMLA requires a covered employer to allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001) (quoting 29 U.S.C. § 2612(a)(1)(D)), *abrogated on other grounds by Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702 (5th Cir. 2016). "If an employee fails to return to work on or before the date that FMLA leave expires, the right to reinstatement also expires." *Id.* Spindle took 24 weeks of medical leave, (Dkt. #36-2 at 24), double the maximum amount afforded under the FMLA per year, *see Hunt*, 277 F.3d at 763. Spindle admits that at the end of the 12-week leave he was not medically released to return to work and did not in fact return at that time. (Dkt. #36-2 at 24). Summary judgment is therefore granted on Spindle's FMLA interference claim.

Spindle's FMLA retaliation claim fares no better. For the reasons discussed, Spindle was not subject to an adverse employment action upon his return from FMLA leave in 2017 or upon his internal change in status in 2019. But even if Spindle did make a prima facie case of retaliation, he did not produce the evidence required to show that CKJ's legitimate, nondiscriminatory reason for termination is a pretext for discrimination.

"To survive summary judgment under the mixed-motive burden-shifting framework, an employee must first make a prima facie case of FMLA retaliation." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013). "The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id*. Assuming Spindle did in fact make a prima facie case of FMLA retaliation, CKJ explains that, in accordance with its policies, it internally changed Spindle's status from inactive to voluntarily resigned due to "job abandonment"—that is, Spindle's failure to show up to work since July 2017—and due to continued payment of Spindle's benefits during that time. *See* (Dkt. #34 at 2–3); (Dkt. #44-3 at 12). Rather than retaliating against Spindle for taking FMLA leave, CKJ did not to terminate him for over a year after he returned from leave and did so for reasons unrelated to exercise of his FMLA rights. CKJ, then, has met its burden to show a legitimate, nondiscriminatory reason for its adverse employment action.

Having done so, "the burden shifts once more to the employee to offer sufficient evidence to create a genuine issue of fact that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination." *Ion*, 731 F.3d at 390. Spindle provided no evidence in its response that CKJ acted with discriminatory intent, much less to produce a genuine issue of fact. Summary judgment is therefore granted on Spindle's FMLA retaliation claim.

With these modifications, the Court adopts the report's findings of fact, reasoning, and legal determinations on this claim.

* * *

The Court adopts the Magistrate Court's report on the pending motions for summary judgment in part and as modified herein. CKJ is entitled to summary judgment on all of Spindle's claims.

## II. MOTION FOR SANCTIONS

CKJ also moved for sanctions against Spindle's counsel for alleged violations of Federal Rule of Civil Procedure 11. The Court adopts the report's determination that no such sanctions are warranted but declines to adopt its reasoning.

Rule 11 was amended in 1983 to "deter baseless filings in district court" with the ultimate aim of "streamlin[ing] the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). To that end, the Rule "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Id.* (internal quotation marks omitted). Failure to comply with the Rule's prescriptions "shall" be met with "an appropriate sanction." *Id.* (internal quotation marks omitted). But Rule 11 has been interpreted to afford district courts "broad discretion" in determining whether the alleged conduct is sanctionable. *Downstream Envtl., L.L.C. v. Gulf Coast Waste Disposal Auth.*, No. 4:05-CV-1865, 2006 WL 3246348, at *1 (S.D. Tex. Nov. 7, 2006) (citing *Cooter*, 496 U.S. at 393, 110 S.Ct. 2447); *see also Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir.

2003) (recognizing that the "abuse of discretion standard [applied to Rule 11 sanctions] is necessarily very deferential").

CKJ asserts that Spindle's counsel should be sanctioned for failing to conduct a reasonable inquiry into the facts and law and pursuing frivolous claims. CKJ's argument, essentially, is that an "experienced employment litigator" would have recognized that Spindle's claims are obviously frivolous and declined to pursue them. (Dkt. #46). The "recalcitrance" of Spindle's counsel in persisting with his client's claims, CKJ says, is also worthy of sanction. *Id.* Specifically, CKJ notes that Spindle's counsel had around ten months to conduct his initial investigation and argues that counsel's experience in employment matters should have produced more rigorous investigation and more thorough pleading. CKJ goes further, arguing that Spindle's amendment of his complaint after discovery commenced was itself sanctionable for continuing to persist with frivolous claims.

The Court disagrees. Spindle's claims cannot survive summary judgment scrutiny, but the mere grant of summary judgment is not sufficient to establish a Rule 11 violation. Such violations are reserved for "the rare and exceptional case where the action is *clearly* frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Laughlin v. Perot*, No. 3:95-CV-2577, 1997 WL 135676, at *8 (N.D. Tex. Mar. 12, 1997) (quoting *Operating Engineers Pension Trust v. A–C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988) (emphasis added)); *see also Erwin v. Russ*, 481 F. App'x 128, 132 (5th Cir. 2012) (per curiam) (unpublished) ("Rule 11 permits sanctions when attorneys unreasonably pursue frivolous or groundless

suits."). Spindle's claims do not present such a violation. Spindle had a history of medical issues and a misunderstanding with his employer regarding his work status. These circumstances resulted in Spindle's nonfrivolous, albeit unmeritorious, belief that CKJ's actions ran afoul of the ADA and the FMLA. Spindle's failure to assert a claim presenting a genuine issue of material fact does not equate to sanctionable conduct under Rule 11. Therefore, CKJ's motion is denied.

### III. Conclusion

The Court **ORDERS** that Defendants CKJ Trucking, LP and CKJ Transport of North Texas, LLC's Joint Motion for Summary Judgment is **GRANTED**. (Dkt. #40). The Court **ORDERS** that Defendant CKJ Trucking, LP's Motion for Summary Judgment is **DENIED as moot**. (Dkt. #36). It is further **ORDERED** that Plaintiff David Spindle's claims concerning ADA reasonable accommodation, ADA disability discrimination, FMLA interference, and FMLA retaliation are **DISMISSED WITH PREJUDICE**. Additionally, the Court **ORDERS** that the CKJ Defendants' Motion for Sanctions is **DENIED**. (Dkt. #46).

**So ORDERED and SIGNED this 18th day of March, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE